**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Samuel Paul GLOVER,**
**Defendant-Appellant.**

**No. 86–6100.**

United States Court of Appeals,
Sixth Circuit.

Argued March 17, 1988.

Decided and Filed May 6, 1988.

John B. Payne, Jr. (argued), Dearborn, Mich. (court appointed), for defendant-appellant.

Joseph M. Whittle, U.S. Atty., R. Kent Westberry, Monica Wheatley (argued), Louisville, Ky., for plaintiff-appellee.

Before JONES and GUY, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant Samuel Glover appeals his conviction of knowingly and willfully making a threat to take the life and inflict bodily harm upon the President of the United States, Ronald Reagan, in violation of 18 U.S.C. § 871 (1982).[1] For the following reasons, we affirm the judgment of the district court.

## I.

At all times relevant to this appeal, Glover and his codefendants were inmates at the Kentucky State Penitentiary at Eddyville, Kentucky. In late August of 1985, three letters were sent to the White House which threatened the life of the President.

---

**1.** Section 871 provides in pertinent part,
(a) Whoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States, ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

These letters formed the basis of the indictment.[2]

Prior to trial, the court entered a reciprocal order of discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure. The order required *inter alia* that the government "permit the defendant to inspect and copy or photograph: ... books, papers, documents, photographs, tangible objects, buildings or places or copies of portions thereof which are within the possession, custody or control of the United States and which the United States intends to introduce as evidence in chief at trial of this case." In violation of this order, the government did not present to the defendant a federal fingerprint card and a handwriting exemplar taken from the appellant. The government stated that this was done inadvertently and argued that any harm was cured by the fact that the defendant had the reports of the experts who used these documents, and the logical fact that the defendant could not have been surprised at the existence of those documents, since he gave the fingerprints and the exemplar, and the experts' reports referenced the documents. The defendants argued that they were prejudiced by this action since they did not have the opportunity to have their own experts analyze the documents. The government points out that the threatening letters and the envelope were provided to the appellant, and that he could have easily produced his own exemplar and fingerprints. The defendants, without moving for a continuance or a recess, requested that the experts not be allowed to testify. The district court did not exclude the experts' testimony.

At trial, the government presented the testimony of the corrections officer who took the appellant's fingerprints, the Secret Service mail room employee who received and stamped the envelope containing the three letters, a fingerprint expert who testified that the appellant's fingerprints were on the envelope, and a handwriting expert who concluded that one of the letters could have been written by the appellant, but because of the nature of the questioned writing, the evidence was far from conclusive.[3] The appellant testified in his defense and denied committing the offense.

At the close of the government's case, the appellant moved for a directed verdict. The motion was denied. Finally, in instructing the jury, the court defined each element of the offense, but did not specifically define the terms "knowingly" and "willfully."

Appellant argues that the government's failure to obey the discovery order warrants reversal, that the court's failure to exclude the handwriting expert's testimony under Federal Rule of Evidence 403 is reversible error, that the court erred in failing to grant a directed verdict since the statements made in the letter were not a "true threat" because the defendants were incarcerated, and that the failure to define knowingly and willfully was plain error.[4] The government counters these arguments without raising additional issues.

## II.

### A.

Appellant's first five arguments deal with the government's failure to present the appellant's fingerprint card and handwriting exemplar.[5] Federal Rule of Criminal Procedure 16(d)(2) provides the remedies for failure to comply with a discovery order.

2. On March 3, 1986, Glover was indicted with Michael Elwood Simms and Roger Clifford Willock for making threats upon the President. Glover was charged in count one of the indictment, Simms and Willock on count two and Glover and Simms on count three. Each count dealt with a separate letter.

3. The government's witnesses also testified about statements made by the appellant relative to serving federal time as opposed to state time. An apparent theory of the government's case was that the defendants were attempting to procure a transfer to a federal prison.

4. The appellant argues plain error because he did not object to the instructions at trial. Fed. R.Crim.P. 52(b).

5. The first four arguments deal with the exemplar, while the fifth incorporates these arguments in relation to the fingerprint card.

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

Fed.R.Crim.P. 16(d)(2).

The decision to impose sanctions under Rule 16(d)(2) is left to the sound discretion of the trial court. *See United States v. Bartle,* 835 F.2d 646, 649–50 (6th Cir.1987).

In *Bartle,* the government failed to furnish to the defendant highly probative evidence in contravention of a reciprocal discovery order. The defendant sought the exclusion of the evidence without moving for a recess or a continuance. The district court permitted the introduction of the evidence. On appeal, Bartle argued that the court abused its discretion in permitting the introduction of the evidence. This court rejected that argument.

In the instant case, Bartle faced with the prospect of the government's introduction of highly probative evidence for which he had not been given a chance to prepare, did not seek a recess or continuance to investigate the accuracy and authenticity of the key-control log, but rather sought its complete exclusion. Excluding a critical piece of documentary evidence when a recess or continuance would have adequately protected the defendant's legitimate interests is particularly inappropriate where, as here, the government neither willfully nor negligently violated the discovery order. Bartle, by not moving the district court for a recess or continuance is not in a position to fault the court for denying his motion to exclude the key-control log.

*Id.* at 650.

In the case before us, the appellant asserts that the failure to turn over the exemplar and the fingerprint card denied him the opportunity to have his own experts analyze them in order to impeach the government's experts. The appellant did not request a continuance or a recess for this purpose, however, but instead, asked that the testimony of the experts be excluded. Given the nature of the evidence which was not disclosed, the nature of the government's conduct, and the severity of the requested remedy, we hold that the district court did not abuse its discretion in denying appellant's motion to exclude the experts' testimony.

■ The appellant also argues that the failure to disclose this evidence was reversible error, because the evidence "might be expected to play a significant role in the suspect's defense." The appellant relies on *Elmore v. Foltz,* 768 F.2d 773 (6th Cir. 1985),[6] and *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In *Bagley,* the Court restated that the nondisclosure of material evidence is violative of the Constitution. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682, 105 S.Ct. at 3383.

In the instant case, the appellant argues that the failure to present the exemplar limited his ability to impeach the expert by having his own expert compare the letter and the exemplar. This argument is specious considering the fact that the letters and envelope were provided to appellant through discovery, and he obviously could have produced his own handwriting and fingerprint exemplars. Appellant, therefore, could easily have had his own expert analyze the letters in order to impeach the government's expert. The fact that the appellant could have had his own expert compare the letters with his handwriting and fingerprint exemplars, but chose not to do this leads this court to the conclusion

---

**6.** Appellant's reliance on *Elmore* is misguided since *Elmore* dealt with destroyed evidence.

that the disclosure of the exemplars would not have changed the results of the proceeding below.

■ Finally, the appellant argues that, notwithstanding the discovery violation, the expert's testimony should have been excluded under Federal Rule of Evidence 403.

Under Rule 403 this Court has recognized that 'the admission of relevant potentially prejudicial evidence is placed within the sound discretion of the trial court. Such discretion must be exercised by balancing the probative value of the evidence against its prejudicial attributes. If in the discretion of the court the probative value of the evidence is *substantially* outweighed by its prejudicial character, the evidence is inadmissible.' (emphasis supplied). Appellate court review of this discretion is limited. We must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect. ('The usual approach on the question of admissibility on appeal is to view both probative force and prejudice most favorable towards the proponent, that is to say, to give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.') 'If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.' '[T]he draftsmen intended that the trial judge be given a very substantial discretion in "balancing" probative value on the one hand and "unfair prejudice" on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise ...'

*United States v. Zipkin*, 729 F.2d 384, 389–90 (6th Cir.1984) (citations omitted).

The appellant argues that the court committed reversible error by admitting the evidence of the expert. He argues that the testimony should have been excluded since the expert could not say that the appellant had executed the questioned document. Appellant's argument is countered by the testimony itself, since the expert only testi-

fied that he could not conclusively determine that the appellant wrote the letter, but did opine that appellant could have written the letter. Given the trial court's broad discretion under Rule 403 and the content of the expert's testimony, appellant's argument must fail.

## B.

■ Appellant argues next that the court should have directed a verdict of acquittal since as a matter of law the threats in the letters were not true threats. The Court in *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) held that section 871 requires the government to prove a true "threat." *Id.* at 708, 89 S.Ct. at 1401–02. Appellant's argument is based on the premise that since he was a prisoner and the threat was mailed from inside a prison, it cannot constitute a true threat and should only be considered loose talk.

The parties agree that intent to carry out the threat is not necessary for conviction under the statute.

This circuit has adopted an 'objective' construction of section 871. A defendant may be convicted under this statute even if he does not harbor an actual, subjective intent to carry out his threat. In *United States v. Lincoln*, 462 F.2d 1368, 1369 (6th Cir.1972), we adopted the rule of the Ninth Circuit, set out in *Roy v. United States*, 416 F.2d 874, 877 (9th Cir.1969):

This Court therefore construes the willfulness requirement of the statute to require only that the defendant intentionally make a statement, written or oral, *in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the President*, and that the statement not be the result of mistake, duress, or coercion. The statute does not require that the defendant actually intend to carry out

the threat [Footnotes omitted.] (emphasis added).

*United States v. Vincent,* 681 F.2d 462, 464 (6th Cir.1982).

Appellant argues that because the letters were sent from inside a prison, no reasonable person could perceive them as being a true threat.

We believe the threats made in the letters sent to the President were of a nature that a reasonable person would foresee that the receiver of the letters would perceive them to be a serious intention to inflict bodily harm upon or take the life of the President. If the appellant's argument were accepted, no prisoner could be convicted under this statute, since his argument seems to be premised on the idea that prisoners are incapable of carrying out threats, therefore, no reasonable person could consider such a threat to be a true threat. This premise is faulty. *See United States v. Leaverton,* 835 F.2d 254 (10th Cir.1987) (inmates convicted for sending simulated mail bomb to Senator Robert Dole). Therefore, since we decline to declare that threats mailed from a prison cannot be true threats as a matter of law, we find no error in the district court's denial of appellant's directed verdict motion.

## C.

Appellant's final argument is that the district court committed plain error when it failed to define the terms knowingly and willfully in the jury charge. The government counters this argument by arguing that the following instruction sufficiently explained the elements of knowledge and willfulness.

The essence of the offense is knowingly and willfully making of a true threat. So if it is proved beyond a reasonable doubt that the defendant knowingly made a true threat against the President, willfully intending that it be understood by others a serious threat, [sic] then the offense is complete and it is not necessary to prove that the defendant actually intended to carry out the threat.

The following standards are applied when invoking the plain error rule.

Since [defendant] failed to object to the jury instructions at trial, reversal is only required in this case if the omission of jury instructions constituted 'plain error.' The Supreme Court and numerous federal courts have repeatedly stated that the plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice. Recourse may be had to the doctrine 'only on appeal from a trial infected with error so "plain" the trial judge and prosecutor were derelict in countenancing it.' Moreover, an improper jury instruction will rarely justify reversal of a criminal conviction when no objection has been made at trial, and an omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of the law.

*United States v. Hook,* 781 F.2d 1166, 1172–73 (6th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986).

In support of his argument, the appellant relies on *United States v. Krosky,* 418 F.2d 65 (6th Cir.1969). In *Krosky,* this court found that the district court committed plain error when it failed to adequately explain the term "willfullness." [sic] *Id.* at 68. There, the defendant was charged with "unlawfully, willfully and knowingly" failing to comply with an order of the draft board to submit for induction into the Armed Forces. The court instructed the jury on intent but did not define the term willful. The jury, while deliberating, sent a question to the judge asking for the "court's interpretation of wilful intend [sic]." *Id.* at 66. The court in response to the questions repeated portions of its instructions. This court found the instructions to be inadequate and reversed and remanded for a new trial.

In the instant case, no request was made by the jury, nor does there appear that any confusion was caused by the instructions. Furthermore, while the court's instruction on willfulness as not parallel to the instruc-

tion that the appellant now suggests should have been given,[7] it does put forth the idea that willfulness means intentionally doing what the law forbids. The court instructed that the defendant must have made a threat "willfully intending that it be understood by others as a serious threat."

Given the court's instructions, we do not believe that the failure to specifically define the terms "knowingly" and "willfully" amounted to a miscarriage of justice or was error so plain that the prosecutor and judge were derelict in countenancing it.

Accordingly, appellant's conviction is AFFIRMED.

---

7. The appellant offers the following pattern instruction: "An act is done 'willfully' if done voluntarily and intentionally, and with the intent to do something the law forbids; that is to say with a purpose either to disobey or disregard the law." This court suggested a similar definition in *Krosky,* 418 F.2d at 67.