**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0605n.06
Filed: August 21, 2007

**No. 04-1614**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **RALPH H. COTTENHAM, II,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **DAVID JAMROG, WARDEN,** | ) | **O P I N I O N** |
| | ) | |
| *Respondent-Appellee.* | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE: KEITH and COLE, Circuit Judges; and OLIVER, District Judge.**[*]

**PER CURIAM.** Petitioner-Appellant Ralph H. Cottenham, II ("Cottenham" or "Petitioner"),

appeals the denial of his § 2254 petition for writ of habeas corpus. For the following reasons, we

**REVERSE** the district court's judgment denying Cottenham's petition and **REMAND** with

instructions to grant a conditional writ of habeas corpus, giving the State of Michigan 120 days

within which to provide Cottenham with an opportunity to file a notice of appeal pursuant to

Michigan law and to proceed with a direct appeal on the merits if he so wishes, or failing that, to

release him.

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern
District of Ohio, sitting by designation.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner was convicted by a jury of assault with intent to murder and carrying a dangerous weapon with unlawful intent. On August 17, 1998, he was sentenced by the Saginaw Circuit Court to fifteen to thirty years imprisonment. (Joint Appendix ("JA") 278.)

At his sentencing hearing, Petitioner timely moved for appointment of new counsel to represent him on appeal. (JA 279.) On September 9, 1998, the trial court granted that motion and appointed Fred Bell ("Bell") of the State Appellate Defenders Office to represent Petitioner. Petitioner then wrote to James Gust ("Gust"), who had served as his trial counsel, and instructed him to release his files. (Addendum[1] 10.) At about the same time, however, Petitioner's parents, without Petitioner's knowledge or consent, paid Gust $5,000 to continue to represent Petitioner on appeal. (JA 370-71.)

On November 30, 1998, Bell and Gust agreed to the substitution of Gust as counsel on appeal, without either having consulted with Petitioner. The court granted substitution of Gust for Bell. (JA 280-81.) On January 5, 1999, Gust responded to Petitioner's letter requesting that Gust release his files, and stated, "Your father has already paid an attorney in Philadelphia to do the appeal. His name is Jan Armon . . . ." (Addendum 10.) Gust suggested that Jan Armon ("Armon") was Petitioner's sole counsel on appeal. In fact, Gust remained counsel of record on appeal and Petitioner's parents had not contacted Armon. Armon was a lawyer that Gust had retained to assist Gust with Petitioner's appeal. (*Id.* at 12.) Petitioner learned that Gust remained his attorney when

---

[1] A substantial portion of the material upon which Appellant now relies is contained in an addendum to his brief. That addendum "contains state court and bar records not made a part of the record below." (Pet. Br. 6.) Respondent has not objected to our consideration of these materials.

he received a copy of the court's substitution order. (*Id.* at 11.) Petitioner then sent a letter to Bell, enclosing notarized statements sent to the trial court judge and Gust, stating that Petitioner had not consented to representation by Gust. (*See* JA 282.) Bell responded that he was unable to continue representing Petitioner without a court order of appointment and he filed a copy of his letter with the trial court. (*Id.* at 282-83.)

On February 3, 1999, Gust proceeded to file a merits appeal brief for Petitioner. (JA 284.) Armon was also listed as counsel on the brief. (*Id.*) Petitioner asked Gust to withdraw the brief and to submit a motion for extension of time to file a new brief, or move to amend the pending brief. (Addendum 12.) Petitioner also requested that Gust file a brief that Petitioner had prepared, which raised ineffective-assistance-of-counsel claims and sought an evidentiary hearing. (*Id.*) Petitioner stated in this letter that if Gust had any problems with these requests, he should withdraw. (*Id.*) Gust did not file the requested pleadings, nor did he withdraw. (JA 230-32.)

On May 10, 1999, Petitioner filed a Motion in the Michigan Court of Appeals to Remand for a New Trial and a Motion for an Evidentiary Hearing on ineffective assistance and prosecutorial misconduct, *pro se*, pursuant to Standard 11. (Addendum 24.) On May 11, 1999, the court returned Petitioner's filings because Petitioner was represented by counsel, Gust, and the court advised Petitioner to discuss the matter with his counsel. (*Id.* at 30.)

On June 18, 1999, Petitioner filed with the court of appeals, again *pro se* and pursuant to Standard 11, a Motion to File a Motion to Remand for a New Trial and a Motion to Remand for Evidentiary Hearing. (*Id.* at 31.) In this motion, Petitioner stated that he had not retained Gust, that his parents had taken it "upon themselves to retain" Gust, that Gust had refused to file the motions Petitioner wanted because they spoke of ineffective assistance, and that Gust had been "very

3

unwilling to assist" Petitioner and had refused to speak with either Petitioner or Petitioner's parents. (*Id.* at 33-34.) Petitioner sent a copy of this motion to Gust. (*Id.* at 36.)

On July 2, 1999, the Michigan Court of Appeals returned Petitioner's motions stating that "an attorney who has entered an appearance may withdraw from the action or be substituted for *only on order of the court*. Therefore, your attorney will need to file a Motion to Withdraw . . . ." (*Id.* at 54.) The court sent copies of the letter to Gust and Armon. (*Id.*) On that same day, July 2, 1999, the court of appeals received Petitioner's Motion to File a Standard 11 brief, with the brief attached. (JA 310-13.) Petitioner explained that his parents had retained Gust without his knowledge and that Gust had refused to raise and argue claims of ineffective assistance and refused to file Petitioner's *pro se* brief. (*Id.* at 311-12.) Petitioner sent a copy of that motion to Gust. (*Id.* at 516.)

On July 6, 1999, Petitioner sent another letter to Gust instructing Gust to submit his request for an evidentiary hearing and a request for an extension of time to file a Standard 11 brief because "drawing this out is exhausting my time on appeal." (Addendum 55.) On July 19, 1999, Petitioner sent a letter to Armon stating that he "did not consent to this representation" by Gust and Armon. (JA 369.) He again instructed Armon to file a motion for an evidentiary hearing and then to withdraw. (*Id.*)

On July 23, 1999, the court of appeals returned Petitioner's Standard 11 brief stating, "[t]his Court cannot accept[] pleadings from you while you are represented by retained counsel." (Addendum 56.) The court also responded to a letter from Petitioner dated July 7, 1999, by restating that "this Court cannot act on a letter alone – an appropriate motion needs to be filed." (*Id.*) The court sent copies to Gust and Armon.

4

On July 26, 1999, Petitioner sent another letter to the court of appeals attempting to file his *pro se* brief. (*Id.* at 58.) He requested that, apart from a motion to withdraw, "no other matter be accepted for [filing] in the above entitled cause [sic] by [Gust or Armon]." (*Id.*) Petitioner also asked the court to accept his *pro se* brief and noted that he had "repeatedly" asked Gust to file a motion for a hearing but that Gust had refused. He concluded by pleading with the court, "[C]an you[] please advise me of what to do? Mr. Gust is ruining my appeal, and you have [been] denying my [*pro se* Standard 11 brief] . . . ." (*Id.*)

On August 6, 1999, the court responded that it did not have the authority to refuse to accept documents from Gust or Armon, and that because Gust had already filed a brief on Petitioner's behalf, new counsel would need to file a motion to substitute for Gust, with the court's permission. (*Id.* at 67.) The court also explained that it had refused to accept Petitioner's Standard 11 brief and motions because "Standard 11 . . . does not apply to you . . . [it] applies only to people who have been deemed indigent by the trial court . . . . Because you retained your own counsel, you are not allowed to file anything under this rule." (*Id.*)

On the same day, August 6, 1999, the trial court received a letter from Petitioner requesting that the court order Gust to file Petitioner's brief and motions, order Gust to withdraw, and reinstate his previous appellate counsel, Bell. (JA 371.) Petitioner noted the problems he was having with Gust and wrote, "[t]here has been a total break down in our attorney/client relationship . . . ." (JA 371.) Petitioner asked the trial court to "protect [his] constitutional rights" to counsel on appeal. (*Id.*) Petitioner sent copies of the letter to Gust and the court of appeals.

5

On August 11, 1999, Gust responded and stated, "I have filed a motion to withdraw as your attorney, however the court denied the motion unless another attorney substitutes for me." (*Id.* at 372.) However, no such motion is recorded on the docket sheet of the trial or appellate court.

On August 13, 1999, Petitioner filed a Motion to Dismiss Appellate Counsel and Appoint New Counsel with the trial court. (*Id.* at 373.) On August 17, 1999, the trial court sent Petitioner a letter stating that "the Court of Appeals currently has jurisdiction in this matter. Therefore, judge Kaczmarek may not consider your request at this time and all further entreaties should be directed to the Court of Appeals." (*Id.* at 376.) On August 20, 1999, the court of appeals sent a notice to the trial court indicating that the trial court, not the court of appeals, had jurisdiction over appointed attorneys. (*Id.* at 246.)

On August 25, 1999, Armon filed a response in the trial court *opposing* Petitioner's Motion to Dismiss Armon and Gust. (*Id.* at 377.) On August 30, 1999, Petitioner filed a second Motion to Dismiss Appellate Counsel and Appoint New Counsel in the trial court. (*Id.* at 380.) On September 20, 1999, Petitioner again filed a Standard 11 brief in the court of appeals. (*Id.* at 384.) The court of appeals rejected his brief without explanation on September 24, 1999. (*Id.*)

On September 27, 1999, Petitioner filed a third Motion to Dismiss Appellate Counsel and Appoint New Counsel. (*Id.* at 385.) He informed the court that "concurrent with this motion Mr. Gust has filed a motion to dismiss Mr. Gust as appellate counsel," but that "[i]t is defendant's understanding that this court has denied Mr. Gust[']s motion" because "new counsel is [not]

6

assigned." (*Id.* at 387.)  Petitioner included a copy of Gust's letter in which Gust claimed to have filed and been denied his request to withdraw.[2]

On October 1, 1999, the trial court ordered that Petitioner be appointed new counsel on appeal, over Armon's objection. (*Id.* at 390.)  On October 7, 1999, the court appointed Neil Szabo ("Szabo") to represent Petitioner.  The appellate court then notified him that oral argument had been scheduled for December 12, 1999, and that the court would not accept filings after November 23, 1999. (*Id.* at 392.)  Szabo filed a motion to adjourn the oral argument and cut-off date because he had not received Petitioner's file until November 2, 1999, and as a consequence, had insufficient time to review it. (*Id.* at 392-93.)  Szabo also requested that oral argument be rescheduled because he had a criminal trial previously scheduled for that date.  The court denied the motion. (*Id.* at 247.)

Szabo was not able to file a brief on behalf of Petitioner within the time-frame set by the court of appeals and he did not appear at oral argument.  On December 14, 1999, the court of appeals affirmed Petitioner's conviction. (JA 394.)  On August 22, 2000, the Michigan Supreme Court denied Petitioner's leave to appeal in a standard order. (JA 500.)  Petitioner subsequently filed a Motion for Relief from Judgment in the trial court, which the trial court denied on October 9, 2000. (Report and Recommendation ("R&R"), JA 181.)

Petitioner then filed a Delayed Application for Leave to Appeal with the Michigan Court of Appeals. (*Id.*)  On January 3, 2002, the Michigan Court of Appeals denied that motion for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D). (R&R, JA 182.)

---

[2]  As a result of the events surrounding Gust's representation of Petitioner, the Michigan State Bar investigated and ultimately admonished Gust, finding that he "committed misconduct by engaging in a conflict of interest by undertaking the representation of [Petitioner] in his appeal where one of the issues on appeal was [Gust's] ineffective assistance of counsel." (JA 507.)

Petitioner again sought leave to appeal to the Michigan Supreme Court, but on September 30, 2002, the Michigan Supreme Court denied Petitioner's Second Application for Leave to Appeal. (*Id.*)

Petitioner, proceeding *pro se*, timely petitioned for habeas corpus relief on November 21, 2002, in the U.S. District Court for the Eastern District of Michigan, raising fifteen grounds for review:

I. DID THE ASSISTANT PROSECUTOR[S] MR. DUGGAN['S] AND MR. PIAZZA['S] PRESENTATION OF THE "FALSE-PERJURED TESTIMONY" OF THE VICTIM DENY PETITIONER HIS DUE PROCESS RIGHTS TO A FAIR AND IMPARTIAL TRIAL?

II. WAS THERE "SUFFICIENT EVIDENCE" TO SUPPORT THE BINDOVER AND CONVICTION OF PETITIONER FOR ASSAULT WITH INTENT TO MURDER, WITHOUT THE FALSE PERJURED TESTIMONY OF THE VICTIM TO ESTABLISH THE ELEMENT OF "INTENT"?

III. DID JUDGE KACZMAREK ABUSE HIS DISCRETION WHEN HE: (1) FAILED TO INVESTIGATE WHETHER OR NOT THE INFLUENCE OF ANSWERS AND STATEMENTS OF A PROSPECTIVE JUROR THAT "PETITIONER HAD BROKEN THE WINDSHIELD OUT OF HER CAR, AND HAD A RUN-IN WITH HER BOYFRIEND["], IRREPARABLY TAINTED [SIC] THE ENTIRE PANEL; (2) FAILED TO GIVE CURATIVE INSTRUCTIONS TO THE JURY[;] AND[] (3) DENIED PETITIONER'S MOTION FOR MISTRIAL?

IV. DID WITNESS SANDRA CONWAY HAVE A "PERSONAL INTEREST" IN THE OUTCOME OF THE PROCEEDINGS AGAINST PETITIONER WHICH RENDERED HER TESTIMONY UNRELIABLE?

V. DID THE "CUMULATIVE EFFECT" OF ASSISTANT PROSECUTOR PIAZZA'S "STATEMENTS" AND "IMPROPER PLEAS" TO THE JURY DURING HIS CLOSING AND REBUTTAL ARGUMENTS COLLECTIVELY RESULT IN A FUNDAMENTALLY UNFAIR TRIAL?

VI. DID THE INACCURACY OF THE PETITIONER'S TRIAL TRANSCRIPTS ADVERSELY AFFECT HIS ABILITY TO OBTAIN POST-CONVICTION RELIEF?

8

VII. DID THE "CUMULATIVE EFFECT OF MULTIPLE ERRORS" DENY THE PETITIONER "DUE PROCESS" AND DID THE "CUMULATIVE EFFECT" OF INEFFECTIVENESS OF ATTORNEY[S] GUST AND ARMON RENDER HIS "APPEAL OF RIGHT" MEANINGLESS?

VII[I]. DID THE MICHIGAN COURT OF APPEALS "ABUSE ITS DISCRETION" WHEN IT DENIED THE PETITIONER, THROUGH COURT APPOINTED ATTORNEY SZABO, THE "DUE PROCESS" RIGHT TO FILE A STANDARD 11 SUPPLEMENTAL BRIEF ESTABLISHED BY ADMINISTRATIVE ORDER 1981-7, 412 MICH. 1xxxiv (EFFECTIVE FEBRUARY 1, 1982), AND ARTICLE 1, SECTION 20, OF THE MICHIGAN CONSTITUTION OF 1963?

IX. WAS PETITIONER DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, BY COUNSEL'S INDIVIDUAL AND CUMULATIVE ERRORS?

X. IS THE PETITIONER ENTITLED TO THE NEW STATUTORY GUIDELINES MCL 769.1; MSA 28.1072 AS AMENDED BY THE MICHIGAN PUBLIC ACT 317, AND AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION?

XI. DID THE TRIAL COURT VIOLATE PETITIONER[']S FEDERAL AND STATE CONSTITUTIONAL RIGHT TO DUE PROCESS, BY FAILING TO RESOLVE A CHALLENGE TO THE SCORING INVOLVING THE GUIDELINES?

XII. DID THE TRIAL COURT CREATE A MISCARRIAGE OF JUSTICE BY LETTING THE PROSECUTOR INJECT INFLAMMATORY, PREJUDICIAL AND/OR BIAS[ED] STATEMENTS ON [THE] INTOXICATION DEFENSE, BEFORE THE JURY AT VOIR DIRE, AND CLOSING ARGUMENTS, AND/OR IN GENERAL, THAT MOST PEOPLE ARE ALREADY SPECULATIVE IN REGARDS [SIC]?

XIII. WAS THERE INSUFFICIENT EVIDENCE ESTABLISHED AT TRIAL TO PROVE BEYOND A REASONABLE DOUBT THAT PETITIONER COTTENHAM, COMMITTED THE CRIMES OF ASSAULT WITH INTENT TO MURDER, AND CARRYING A DANGEROUS WEAPON WITH UNLAWFUL INTENT?

XIV. WAS PETITIONER COTTENHAM DEPRIVED HIS CONSTITUTIONALLY GUARANTEED DUE PROCESS RIGHTS TO A FAIR TRIAL, BY THE CUMULATIVE EFFECT OF ERROR COMMITTED BY THE TRIAL COURT, THE PROSECUTION, AND TRIAL COUNSEL?

XV. HAS PETITIONER COTTENHAM MET THE GOOD CAUSE AND ACTUAL PREJUDICE REQUIREMENT OF MCR 6.508(D), WITH THE SHOWING THAT APPELLATE COUNSEL FAILED TO RAISE SIGNIFICANT ISSUES ON THE APPEAL OF RIGHT, THAT WOULD HAVE REQUIRED REVERSAL ON APPEAL, THUS, VIOLATING MR. COTTENHAM'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT[S]. U.S. CONST. AMENDS. VI, XIV.

(R&R, JA 183-85.)

The Report and Recommendation adopted by the district court found that the majority of Petitioner's claims were procedurally defaulted because they were raised for the first time during Petitioner's direct appeal to the Michigan Supreme Court, rather than before the Michigan Court of Appeals, and that Petitioner had not shown cause and prejudice for the default. Petitioner's fifteenth claim for ineffective assistance of appellate counsel was among those that the district court found to be unexhausted. The Report and Recommendation addressed Petitioner's remaining claims on the merits, finding that Petitioner failed to demonstrate that the Michigan courts' resolution of his claims was contrary to, or involved an unreasonable application of, clearly-established federal law. Petitioner did not file any objections to the Report and Recommendation, which was adopted by the district court. The instant appeal followed.

## II. STANDARD OF REVIEW

In reviewing federal habeas corpus proceedings, this court examines the district court's legal conclusions *de novo* and its factual findings under a clearly erroneous standard. *See Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003) (citing *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999)).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), provides in part that a federal court may grant a writ of habeas corpus with respect to a

10

state court judgment only where "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (citing 28 U.S.C. § 2254(d)).

## III. LAW AND ANALYSIS

### A.

As an initial matter, we note that Petitioner's failure to file objections to the Report and Recommendation does not foreclose his claims in the instant appeal. While we have regularly enforced the rule regarding a magistrate judge's report and recommendation that "a party shall file objections with the district court or else waive right to appeal," *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981), we have also observed that "[i]t plainly is not a jurisdictional rule; the court of appeals retains subject matter jurisdiction over the appeal regardless of the untimely filing or nonfiling of objections." *Kent v. Johnson*, 821 F.2d 1220, 1222-23 (6th Cir.1987). Moreover, in *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 714-15 (6th Cir. 2001), we held that where a plaintiff fails to object to a magistrate judge's report, his appeal will be "treat[ed] as if it had not been waived" when: (1) the defendant does not argue waiver under the objection rule in its appellate brief; (2) "the plaintiff[] at least alerted the court that [he] objected to the report"; and (3) the district court does not itself make use of the objection rule or rely on it." Here, Respondent has not argued that Petitioner waived his claims by failing to object to the Report and Recommendation. Next, Cottenham alerted the district court that he objected to the magistrate judge's report, arguing that the report "dr[ew] incorrect or inapplicable legal conclusions" in his motion seeking an extension of time

11

to develop such arguments. (*See* Pet.'s Mot. for Enlargement of Time, R.37, Supplemental Addendum.) Finally, the district court did not make use of the objection rule, as it adopted the magistrate judge's report on the merits. (*See* Order Adopting R&R, R. 40, Supplemental Addendum.) Furthermore, after Petitioner sought a certificate of appealability, the magistrate judge recommended denial, but not because Petitioner had failed to object to the original report. (*See* R&R on Certificate of Appealability, R. 47, Supplemental Addendum.) The district court accepted the magistrate judge's recommendation, but again, did not rely on the objection rule. (*See* Order Adopting R&R on Certificate of Appealability, R.49, Supplemental Addendum.) Therefore, as in *Vaughn*, we treat Petitioner's claims as if they had not been waived.

On appeal, Petitioner is represented by counsel and raises two claims of constitutional error: (1) the right to choice of counsel; and (2) the right to present the issues of one's own choosing on appeal. The basic thrust of Petitioner's claims is that he should have been allowed to file a brief raising the issues that he wished to raise, largely because he was not allowed to have counsel of his choice. The R&R adopted by the district court does not contain any analysis of either issue.[3] Both Petitioner and Respondent proceed as though the district court found Petitioner's claims to be procedurally defaulted.

---

[3]    The district court clearly thought that the Petitioner raised only an ineffective assistance of appellate counsel claim and a claim to a right to file a *pro se* brief when a defendant was represented by counsel. At the time he filed his habeas petition, Cottenham was proceeding *pro se*. Petitioner painstakingly described how his appointed counsel, Bell, was permitted to withdraw without notice, and his difficulties with Gust, whose representation he did not consent to. (*See* Petition, JA 10-17.) Therefore, though Cottenham's habeas petition does not overtly raise by name the issues of right to choice of counsel and right to raise the issues of one's choice on appeal, we find that his habeas petition, as a whole, can fairly be read to raise these claims.

12

**B.**

Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, he must exhaust his state court remedies by fairly presenting all of his constitutional claims to the highest state court, and to all appropriate prior state courts. *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). A claim is fairly presented when it is presented at the first possible opportunity within "'one complete round' of the state's appellate review system." *Caver*, 349 F.3d at 346. In determining fair presentation, "less stringent standards and active interpretation . . . are afforded to the filings of pro se litigants." *Id.* at 347. Courts consider whether the defendant: "(1) reli[ed] upon federal cases employing constitutional analysis; (2) reli[ed] upon state cases employing federal constitutional analysis; (3) phras[ed] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleg[ed] facts well within the mainstream of constitutional law." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

In addition, "[a] federal court is also barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to the state courts due to a procedural defect or waiver." *Deitz v. Money*, 391 F.3d at 808 (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). When a habeas petitioner no longer has an available procedure for presenting unexhausted claims to the State courts, the claims are considered to be procedurally defaulted. However, the default may be excused if the petitioner can demonstrate that there was cause for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*

13

*v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Respondent argues that Petitioner's claims are procedurally defaulted because Petitioner did not raise them in the Michigan Court of Appeals and only first raised them in his Application for Leave to Appeal filed in the Michigan Supreme Court, after the Michigan Court of Appeals affirmed his conviction. (Resp. Br. 8.) On August 22, 2000, the Michigan Supreme Court denied Petitioner leave to appeal in a standard order. (JA 500.) Respondent further argues that Petitioner then returned to the trial court and filed a Motion for Relief from Judgment, which he pursued all the way through the Michigan Court of Appeals and to the Michigan Supreme Court, yet he failed to raise the claims concerning his appeal of right. Respondent maintains that Petitioner cannot show cause or prejudice because he had the opportunity to present his claims to both the court of appeals and the Michigan Supreme Court during his second state court appeal, but failed to do so. (*Id.* at 12.)

Petitioner contends that his claims are not procedurally defaulted for two reasons. First, Petitioner argues that he repeatedly raised the issue of his problems with Gust and Armon before the Michigan Court of Appeals, by motions and by letters to the court. He did so when he was trying to have Gust dismissed as counsel so that new counsel could be appointed, and while he was attempting to file his *pro se* brief to raise the issues of his choice on appeal. Therefore, Petitioner argues that he did fairly present these claims in one full round of the state's appellate review system.

In support of his argument, Petitioner cites *Elmore v. Foltz*, 768 F.2d 773 (6th Cir. 1985). There, we found that a habeas petitioner had fairly presented his claims of suppression of exculpatory evidence and ineffective assistance of counsel when, after filing his appeal in the Michigan Court of Appeals, but before a decision on the merits of his appeal, he moved to remand to the trial court to

14

create a testimonial record on these two issues, later raised in his federal habeas petition. *Id.* at 774. The Michigan Court of Appeals denied that motion. *Id.* at 774-75. Though the petitioner had not raised these two issues in his brief on the merits before the Michigan Court of Appeals, we concluded that the claims were exhausted because the petitioner's motion to remand was procedurally proper and detailed enough to "fairly present" the claim to the Michigan Court of Appeals. *Id.* at 775. As in *Elmore*, we find that Petitioner's motions and letters to the court of appeals regarding his problems with Gust and his inability to raise the issues of his choice on appeal sufficiently presented Petitioner's claims to the Michigan Court of Appeals.

Second, Petitioner urges this court to find that if he did not raise the issues he seeks to raise herein before the Michigan Court of Appeals, that we find that he raised his claims at the first available opportunity in his direct appeal to the Michigan Supreme Court. Before the Michigan Supreme Court, Petitioner raised the issue that he should have been permitted to file a supplemental brief in the Michigan Court of Appeals because "all criminal defendants . . . are entitled to the appellate process in the State of Michigan" and that he was denied "a meaningful 'Appeal of Right'" under *Evitts v. Lucey*, 469 U.S. 387, 391-99 (1985). (*See* JA 489.) Petitioner explained that his parents hired Gust without his consent and that Gust refused to withdraw. He also argued that he was entitled to a new appeal because the court of appeals would not permit Szabo time to file a formal brief appealing the issues of Petitioner's choice. Petitioner argues that the Michigan Supreme Court was the first court in which he could have raised these issues, as the constitutional violation arose for the first time in the court of appeals, not the trial court. Petitioner cites *Caver*, 349 F.3d 340, in support.

15

In *Caver* we concluded, among other things, that the inmate's ineffective assistance of trial counsel claim was not procedurally defaulted because, though the inmate had not raised it in his direct appeal to the Michigan Court of Appeals, he did raise the issue in his *pro se* appeal to the Michigan Supreme Court by asserting that he had wanted to present an ineffective assistance of trial counsel claim, but that the ineffectiveness of his appellate counsel had denied him the opportunity. *Id.* at 347. We determined that this amounted to a fair presentation of the ineffective assistance of trial counsel claim, "[g]iven the less stringent standards and active interpretation that are afforded to the filings of pro se litigants." *Id.* (quoting *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001)).

*Caver* supports Petitioner's position that his *pro se* appeal to the Michigan Supreme Court constitutes fair presentation to the state courts. Petitioner explained in his direct appeal to the Michigan Supreme Court that he wanted appointed counsel and how his parents had hired Gust without his consent, thus alerting the court to his claims of right to choice of counsel and right to appeal the issues of his choice. As in *Caver*, this amounts to fair presentation of Petitioner's claims, considering his *pro se* status. Furthermore, Respondent concedes that Cottenham's petition to the Michigan Supreme Court from direct appeal "include[d] the two substantive claims Petitioner presents in this appeal." (Resp. Br. 5.)

Because we find that Petitioner did fairly present his claims to the Michigan Supreme Court, as well as to the Michigan Court of Appeals, we conclude that Petitioner did in fact exhaust his claims of right to choice of counsel and right to appeal the issues of his choice. Thus, these claims are not procedurally defaulted.

**C.**

16

Denial of the right to counsel on appeal, including the right to counsel of choice, is structural error that can never be harmless. In *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557 (2006), the Supreme Court stated,

> Where the right to be assisted by counsel of one's choice is wrongly denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.

*Id.* at 2563; *see also Roe v. Flores-Ortego*, 528 U.S. 470, 483 (2000); *Wilson v. Mintzes*, 761 F.2d 275, 281, 286 (6th Cir. 1985).

The Fourteenth Amendment requires that an indigent defendant receive due process and equal protection in his appeal of a criminal conviction. *See Ross v. Moffit*, 417 U.S. 600, 608-09 (1974); *Thomas v. Arn*, 474 U.S. 140, 155 (1985). An indigent defendant has a constitutional right under the Fourteenth Amendment to a review of his case on appeal as a matter of right if the same right is extended to non-indigents. *See Benoit v. Wingo*, 423 F.2d 880, 882 (6th Cir. 1970). Further, a criminal defendant has the right to "notice and an opportunity to be heard when his attorney of choice seeks to withdraw from representation." *United States v. Treadway*, 328 F.3d 878, 887-88 (6th Cir. 2003).

Respondent relies solely upon the district court's conclusion that Petitioner's claims are procedural defaulted. Thus, Respondent does not address the merits of Petitioner's claims.

Petitioner first argues that his right to counsel of choice was violated because he was not given notice or a hearing before Bell withdrew, nor did Petitioner choose to have Gust retained as counsel. Petitioner contends that he repeatedly informed the court of appeals that Gust was not his chosen counsel, and that he wanted appointed counsel, but the court rejected Petitioner's pleadings.

17

Petitioner argues that had he been afforded notice, both the court and Bell would have learned that Petitioner had not retained Gust and did not consent to the substitution.

Second, Petitioner argues that the fact that his parents had spoken with and retained Gust is insufficient to constitute notice and/or knowledge. Counsel's communication with a defendant's family members fails to satisfy the requirement that a defendant be given notice and an opportunity to be heard. *See Boyd v. Cowan*, 519 F.2d 182, 183 (6th Cir. 1975). In *Boyd*, we held that the defendant had been denied counsel where his retained counsel decided not to appeal without first discussing the matter with the defendant. *Id.* The district court denied the defendant's habeas petition after finding that counsel had discussed the matter with "either the defendant or his sister, or both." *Id.* We rejected that conclusion because there was no evidence that counsel, or the sister, had communicated with the defendant. *Id.* at 184. We explained that the "right to appeal and to counsel at appeal are personal rights of [c]onstitutional dimension" and that the defendant's decisions regarding his appeal could not be "delegated to another upon a silent record." *Id.* Similarly, in the instant case, Petitioner contends that he did not authorize his parents to retain Gust to represent him and that Bell withdrew without first consulting with Petitioner.

Third, Petitioner argues that he was denied his right to choose his counsel when the Michigan courts refused to allow him to discharge Gust. A criminal defendant has the constitutional right to counsel of choice on his appeal. *See Wilson*, 761 F.2d at 278-80. As the *Wilson* court explained, "'[a]n unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.'" *Wilson*, 761 F.2d at 280 n.6 (quoting *Faretta v. California*, 422 U.S. 806, 821 (1974)). The right to choice

18

of counsel is implicated whenever a defendant informs the court that his current counsel is not his counsel of choice or that he is unhappy with his counsel. *See States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990); *Wilson*, 761 F.2d at 281 n.10. Upon receiving such information, a court has an obligation to investigate. *Iles*, 906 F.2d at 1131 (A "court usually must engage a defendant in person where he has expressed dissatisfaction with counsel and has sought to have him removed."); *Linton v. Perini*, 656 F.2d 207, 211-12 (6th Cir. 1981) (holding that a defendant's right to counsel was violated by the court's summary denial of motion for substitution).

In the instant case, the court of appeals did not grant Petitioner a hearing on his claim of denial of counsel, though Petitioner repeatedly told the court that he had not retained Gust, had instructed Gust to withdraw, did not consent to representation by Gust, and did not want the court to accept filings from Gust on his behalf. Although the trial court did eventually grant Petitioner's Motion to Dismiss Gust and Armon, the ruling came too late for Szabo to meet the deadline for briefing on appeal. Respondent does not dispute any of the relevant facts underlying Petitioner's constitutional claims. Consequently, we find that Petitioner was denied the right to choice of counsel on appeal.

Petitioner next argues that he was denied the limited right to appeal the issues of his choice because retained appellate counsel refused to present the issue of his own ineffective assistance as trial counsel and refused to withdraw, and because the court would not accept Petitioner's *pro se* motions. This court treats this claim as part and parcel of his claim to right to choice of counsel.

As previously noted, Respondent rests solely on the argument that Petitioner's claims are procedurally defaulted, and does not dispute any of the relevant facts underlying Petitioner's constitutional claims. As the court has determined that Petitioner's claims are not procedurally

defaulted, and there is no dispute regarding the merits of Petitioner's claims, we find that Petitioner was denied the limited right to appeal the issues of his choice when he was denied his choice of counsel.

## IV. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment denying Cottenham's petition for writ of habeas corpus pursuant to § 2254 and **REMAND** with instructions to grant a conditional writ of habeas corpus, giving the State of Michigan 120 days within which to provide Cottenham with an opportunity to file a notice of appeal pursuant to Michigan law and to proceed with a direct appeal on the merits if he so wishes, or failing that, to release him.