**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0817n.06

**No. 09-1071**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| **DARRYL WOODS,** | ) | |
| | ) | **Dec 07, 2011** |
| | ) | LEONARD GREEN, Clerk |
| Petitioner-Appellant, | ) | |
| | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| v. | ) | **COURT FOR THE EASTERN** |
| | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| **RAYMOND BOOKER, WARDEN,** | ) | **O P I N I O N** |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE:     KEITH, SUTTON, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  This is an appeal from denial of habeas relief.  After the

Michigan courts denied Petitioner Woods's requests for appellate and post-conviction relief, the

district court denied six claims for relief.  We certified two of those claims for appeal.  In these

claims, Woods contends he was denied due process when the prosecution used perjured testimony

at trial and that his trial counsel was ineffective for failing to properly investigate and present his

defense.  On due consideration, we affirm the district court's denial of the writ for the reasons that

follow.

**I.  BACKGROUND**

On October 5, 1990, Darryl Woods ("Woods") was convicted in Wayne County Circuit Court

of first-degree premeditated murder, first-degree felony murder, assault with intent to rob while

armed, and felony firearm possession. The Michigan Court of Appeals summarized the facts

adduced at Woods's trial (which was a joint trial with defendant Mario Henderson before separate

juries) as follows:

> These consolidated cases involve the shooting death of Anthony Capers and the gunshot injuries of Cecil Brewington during an attempted drug-related robbery in the City of Detroit on January 25, 1990. According to the trial testimony, Brewington went to Capers' house to lend him $3500 to purchase four and one-half ounces of cocaine from defendant Woods. Brewington waited with Capers and a third man, Charles Kemp, for Woods to arrive with the cocaine.
>
> When Woods arrived at Capers' house, he was accompanied by defendant Henderson. In response to Capers' inquiries, Woods explained that he did not have the cocaine with him, but that two men waiting outside in the car had it. Capers and Brewington then became nervous, and Brewington suggested that Capers "squash" the deal. At that point, Woods offered to get the cocaine himself from the men in the car.
>
> While defendant Henderson remained in the house, Woods went to the car and returned with the two men. As soon [as] they were inside the house, one of the two men from the car pulled out a gun and announced a "stick-up." At that point, Kemp testified that defendant Henderson told him to "face down," and saw that Henderson was armed as were the other three.
>
> When Capers, who was unarmed, began moving toward the back bedroom, he was chased and was shot six times by one of the two men from the car. After the gunfire from the back of the house was heard, the gunman covering Brewington demanded to know who had the money. Brewington said that he did, throwing the money on the dining room table. As the gunman bent down, Brewington ran to the front door. When Brewington refused to let go of the door, Woods shot him in the leg and again in the thigh. As Woods raised the gun to his head, Brewington grabbed Woods' hand and the gun fired a third time, missing Brewington. When the door would not open, defendants Woods and Henderson fled with the other two men through the front window, leaving the area in a blue car.

*People v. Woods*, No. 136731, slip op. 1–2 (Mich. Ct. App. 1993).

At the time of sentencing, Woods's conviction for premeditated murder was vacated. Woods

was sentenced to mandatory life imprisonment without parole for felony murder, ten to thirty-five years of imprisonment for assault with intent to commit murder, eight to thirty-five years of imprisonment for assault with intent to rob, and a mandatory two-year term of imprisonment for felony firearm possession.

## A.  Procedural Background

Woods's efforts to obtain relief from the Michigan courts proved unsuccessful.[1]  On Woods's motion for relief from judgment,[2] the trial court conducted an evidentiary hearing regarding Woods's claim of newly discovered evidence during which two witnesses, Charles Kemp and Willie Thomas, testified.  The trial court granted Woods's motion for relief from judgment on the ground that substantial doubt existed as to whether Kemp's trial testimony was untruthful and that the perjured testimony clearly prejudiced Woods.

The Michigan Court of Appeals granted the prosecutor leave to appeal.  In reversing the trial court, the state appellate court held that the new evidence was not material, and would not have impacted the outcome at trial.  *People v. Woods*, No. 249036 (Mich. Ct. App. 2004).  The state appellate court later denied a motion for reconsideration.  *People v. Woods*, No. 249036 (Mich. Ct. App. 2005).  The Michigan Supreme Court denied leave to appeal.  *People v. Woods*, 128101 (Mich. 2005).

---

[1]These efforts are described in detail in the district court's opinion.  *Woods v. Booker*, 2008 WL 4808724 *2–*3 (E.D. Mich. 2008).

[2]The specific issues raised in Woods's motion for relief from judgment before the state trial court are outlined in the district court's opinion.  *Woods*, 2008 WL 4808724 at *2–*3.

This petition for writ of habeas corpus was then filed with the district court, raising six

separate issues,[3] among them:

> I. Petitioner was denied due process of law when the state used perjured testimony
> at trial that led to Petitioner's conviction and a newly discovered witness provided
> evidence establishing prejudice to petitioner's right to a fair trial.
>  . . .
> III.  Petitioner Woods was deprived of his right to effective assistance of counsel
> when his attorney (a) failed to properly investigate and present the defense, (b) failed
> to object to the prosecutor's improper statements, and (c) failed to object to
> inadmissible hearsay that prejudiced petitioner's right to a fair trial.

The district court denied the petition.  *Woods*, 2008 WL 4808724 at *1.  This Court granted a

Certificate of Appealability based on the following issues: (1) whether Woods was denied due

process when the prosecution used perjured testimony at trial; and (2) whether his trial counsel was

ineffective for failing to properly investigate and present his defense.

## B.  State Trial Court Proceedings[4]

At Woods's state-court trial, Brewington and Kemp were the two primary witnesses for the

prosecution.  Additionally, Woods's police statement was read into the record by the officers who

took the statements.  Woods presented a theory of the case that, rather than being on the scene as a

member of the group that shot Capers, he went to Capers's house to purchase marijuana and was

---

[3]The full list of issues raised in the petition considered by the district court is laid out in
that court's opinion.  *Woods*, 2008 WL 4808724 at *6.

[4]During the post-conviction evidentiary hearing to hear newly discovered evidence, the
state trial court also heard testimony from an individual named Willie Thomas.  Thomas did not
testify at Woods's original trial.  Although Woods briefed the issue of newly discovered
evidence, that issue is outside the scope of our Certificate of Appealability.  Thus, we do not take
it up on appeal.  *See* 28 U.S.C. § 2253(c)(1), (2).

simply in the wrong place at the wrong time.

*1. Witness Charles Kemp*

During the trial, Charles Kemp ("Kemp") testified that he, Tony Capers, and Cecil Brewington were at Capers's house on January 25, 1990, waiting for an individual named Syke. Kemp stated that, at approximately 6:00 p.m., someone knocked on the front door and identified himself as Syke. When Capers opened the door, Woods and co-defendant Henderson entered the room. At one point, Woods went outside and when he returned he was accompanied by two additional, unidentified men. Kemp further testified Henderson pulled out a gun and told Kemp to lie face down on the floor. Kemp testified that Woods and the other two men also had handguns. Kemp testified that he heard a demand for money, and was under the impression that Capers possessed a large amount of cash. Then Kemp stated two of the four men took Capers to the back bedroom. Kemp heard three gunshots from the direction of the back bedroom. Kemp also testified he heard Brewington screaming. Kemp testified that the men then exited Capers's house by way of the front window. Kemp denied having any involvement in any drug sales orchestrated by Brewington.

At the evidentiary hearing, Kemp gave the following relevant testimony: he admitted that, in January 1990, he was selling drugs for Brewington. On the day of the shooting, Woods and Henderson came to Capers's house when Kemp, Brewington, and Capers were present. After a few minutes, two more men entered the home. Brewington and one of the two men began arguing and Brewington threw some money on the floor. Kemp testified that, at one point, Capers fled to the back bedroom. Capers was followed by one of the men, not Woods or Henderson. Seconds later,

Kemp heard gunshots. He then dove to the floor and pulled out his gun. Woods and Henderson also dove to the floor. Kemp testified that neither Woods nor Henderson had a weapon. Seconds later, the other two men fled through a window, and Woods and Henderson followed shortly thereafter. Kemp and Brewington left through the window and stood on the front porch, then Willie Thomas approached the front porch. Brewington told Kemp and Thomas to go inside and clean up the money that was on the dining room floor, which they did. Kemp also went to the back bedroom and retrieved Capers's gun. Kemp further testified at the evidentiary hearing that he lied when he gave a statement to police after the shooting because Brewington was on an appeal bond and he was serving probation and he did not want either of them to get into trouble. Kemp then testified that he decided in October 2001 to tell the truth about what had occurred because it had been on his conscience. Kemp, who was serving a sentence of 20 years to life imprisonment for a murder in Ohio and was eligible for parole in four years, testified that he lied at the original trial after he was advised that a new charge of perjury could earn him another sentence of 20 years to life imprisonment.

Towards the end of the evidentiary hearing, the prosecutor presented tape-recorded conversations between Kemp, who was incarcerated at the time, and several individuals. The prosecutor argued that these conversations indicated Kemp was receiving compensation for recanting his trial testimony by someone related to Woods. During one of the tape-recorded conversations, Kemp allegedly mentioned that he was coming to Detroit and that he had received $200 from Woods's cousin, in exchange for saying Woods and Brewington did not do anything. The prosecutor submitted evidence that Kemp received three money orders, including one for $200, prior to this

taped conversation.

### 2. Witness Cecil Brewington

In his trial testimony, Brewington claimed that Woods was supposed to bring drugs to Capers and that Henderson arrived with Woods. Brewington further testified that Woods left and returned with two other men (one of whom was the shooter). Finally, Brewington testified that Woods shot him in the scramble to escape the flat after shots rang out in the bedroom. *Id.* at 293. At both the time of the incident and the time of the trial, Brewington had recently been convicted of a drug charge and was released on bond pending appeal. Just over four months after Brewington's testimony, the Michigan Court of Appeals affirmed his conviction, but remanded with instructions that the trial court enter a lesser sentence. *People v. Brewington*, No. 119778 (Mich. Ct. App. 1991). Brewington was not involved in the trial court's subsequent evidentiary hearing.

### 3. Woods's Statement to Police

At Woods's trial, Woods testified that he was at the scene only to purchase marijuana and was not associated with the shooter. His statement to police was also read into the record. He said that "[Brewington] was there and he pulled his gun out . . . I kept telling him to calm down, that I wasn't going to hurt him and everything should be all right. He was still acting crazy so I pulled my gun out and shot three times toward the ground." When directly asked "did you shoot Cecil?" Woods answered "I don't know." R. 10-4 at 36, 39.

## II. ANALYSIS

**A. Standard of Review**

This Court reviews the district court's legal conclusions and rulings on mixed questions of

law and fact de novo, and reviews factual findings for clear error. *Boykin v. Webb*, 541 F.3d 638, 642 (6th Cir. 2008). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts may not grant habeas relief on any claim that was adjudicated on the merits in state courts unless the adjudication resulted in a decision that: (1) was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The first prong of AEDPA analysis is commonly broken into its two clauses. Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite from the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, to warrant habeas relief, the state court's application must be found to be "objectively unreasonable." *Id.* at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

The second prong of AEDPA review goes to the reasonableness of the state court

determination of facts in light of the evidence presented during the proceeding. 28 U.S.C. § 2254 (d)(2). This Court is obligated to presume the correctness of state-court factual determinations. 28 U.S.C. § 2254(e)(1). The habeas petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010).

AEDPA's deferential standard of review applies only to state-court adjudications on the merits. *Cone v. Bell*, 129 S.Ct. 1769, 1784 (2009). Where AEDPA deference does not apply, state-court adjudications of legal issues are reviewed de novo and a state court's factual findings are reviewed only for clear error. *Id.*; *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009). Here, the district court concluded that Woods's second claim before this Court was procedurally defaulted because Woods did not raise it on direct appeal. We review the district court's procedural default ruling de novo. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 836 (6th Cir. 2010).

## B. Alleged Use of Perjured Testimony

Woods claims that he was denied due process because allegedly perjured testimony was presented at trial and the Michigan Court of Appeals' decision holding that this testimony did not warrant a new trial was an unreasonable application of federal law. Supreme Court precedent is clear that the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice" and is prohibited by the Due Process Clause. *Giglio v. United States*, 405 U.S. 150, 153 (1972). A conviction obtained by the knowing use of perjured testimony must be set aside if such testimony "in any reasonable likelihood [could] have affected the judgment of the jury." *Id.* at 154. This includes situations where false evidence relates to a witness's credibility, as well as the defendant's actual guilt. *Napue v. Illinois*, 360 U.S. 264, 269

(1959).

Woods claims the Michigan Court of Appeals unreasonably applied Supreme Court precedent when it decided that the allegedly false testimony was not material to the jury's consideration of this case. We have summarized the conjunctive, three-part test that a petitioner must satisfy to make this showing as follows: (1) "the statement was material"; (2) "the statement was actually false"; and (3) "the prosecution knew it was false." *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). We consider the reasonableness of the state appellate court decision based on each of these elements.

*1. Materiality*

The element that was the focus of the Michigan Court of Appeals' decision is materiality. The use of perjured testimony does not require a new trial simply because the new evidence is "possibly useful to the defense." *Giglio*, 405 U.S. at 154. Rather, "[a] new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Id.* (quoting *Napue*, 79 S.Ct. at 1178); *see also Gordon v. United States*, 178 F.2d 896, 900 (6th Cir. 1949), *cert. denied*, 339 U.S. 935 (1950) (asking whether, "without [the false testimony] the jury might have reached a different conclusion"). In applying this standard, we consider how the jury's judgment may have been affected if Kemp's recanting testimony was accepted as true in its entirety. *United States v. Bouquett*, 837 F.2d 1091, 1091 (1988).

The Michigan Court of Appeals reasonably held Kemp's allegedly perjured testimony was not material. If Kemp's recanting testimony would have been offered to, and believed by, the jury in Woods's original trial, then Kemp's testimony would have reinforced Woods's own testimony that he did not arrive with—and by inference was not associated with—the shooter. However, the

- 10 -

Michigan Court of Appeals determined that Woods's and Kemp's statements would have been contradicted by Brewington's claim that Woods brought the shooter to the door, diminishing its effect on the jury.

More importantly, Kemp's statement that Woods was unarmed would have contradicted Woods's own statement that he was armed, and had fired warning shots to calm Brewington down. Although the Michigan Court of Appeals overstated this conflict by incorrectly stating that Woods admitted that he shot Cecil Brewington, the central point the state appellate court was making remains intact: Kemp's recanted testimony would have been the only testimony supporting Woods's version of the facts, and would still conflict with Woods's presentation in a fundamental way. *Cf. Bouquett*, 837 F.2d 1091 (finding recanting testimony immaterial where, even if it were accepted as true, it was unlikely to affect the jury verdict). All in all, it was reasonable for the Michigan Court of Appeals to find Kemp's recanting testimony immaterial.

### *2. Statements Actually False*

It is unclear whether Kemp's trial-court testimony was actually false. Woods points to *Napue* in support of his claim for relief. *See* 360 U.S. at 267. There, the Supreme Court accepted that trial testimony was false because a witness stated on the trial record he was not receiving consideration for his testimony, but the prosecutor later requested a lighter sentence based on such consideration. *Id.* When it comes to Kemp's testimony, we lack such a clear inference of falsity. Woods asked the Michigan Court of Appeals to believe Kemp's evidentiary-hearing testimony over his trial testimony because he risked a significantly longer prison sentence by recanting. Although Kemp's precarious legal situation does lend credibility to his post-conviction testimony as an admission, that credibility

is pitted against the suspect nature of a recanting witness's testimony. *See United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir.1991) ("recanting affidavits and witnesses are viewed with extreme suspicion"). The recanting testimony is further discredited by the time that elapsed between Kemp's trial testimony and his recanting testimony, and the possibility that he may have received money transfers in exchange for his testimony. The state court of appeals could reasonably have concluded that Woods failed to demonstrate Kemp's trial-court testimony was actually false.

### 3. Prosecutor's Knowledge

The Michigan Court of Appeals did not assess whether the prosecutor acted knowingly in admitting this allegedly perjured testimony because that court rested its decision on immateriality. Woods claims we could imply that the prosecutor knowingly elicited false testimony because of Brewington's inconsistent statements. This argument does not explain why the prosecutor would have known that Kemp's testimony was false. Furthermore, "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). Likewise here, we cannot find that, simply because Brewington changed his story over the course of the litigation, the prosecutor must have known that the testimony given at Woods's trial was false.

Woods also contends that, when the State learned the testimony was allegedly perjured during the post-conviction evidentiary hearing, the State's failure to correct the error at that point violated Woods's due process rights. A violation of due process also occurs where a prosecutor "allows [false testimony] to go uncorrected when it appears." *Napue*, 360 U.S. at 269. Nonetheless, no such violation occurred here. At the time of the evidentiary hearing, and even now, the State could have

reasonably concluded that Kemp did not perjure himself at trial. Furthermore, there was no need for the State to correct any error at the evidentiary hearing because the trial court had just granted a new trial.

The district court correctly concluded that the decision by the Michigan Court of Appeals merited AEDPA deference. *See* 28 U.S.C. § 2254(d). As outlined above, the decision aligns squarely within clearly established federal law standards and did not unreasonably apply Supreme Court precedent. § 2254(d)(1). Moreover, despite an incorrect summation of Woods's statement regarding the Brewington shooting, the state appellate court's decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." § 2254(d)(2). On the whole, the testimony given at the evidentiary hearing does not undermine our confidence in the outcome at trial, and we affirm the district court's decision in this regard.

## C. Ineffective Assistance of Counsel

Woods claims that his trial attorney failed to properly investigate and prepare a defense by failing to discover that, at the time he testified for the prosecution, Cecil Brewington was released on appeal bond from a cocaine-possession conviction. The district court found that, because there was no evidence that Woods raised this claim on direct appeal, he had failed to exhaust it, and the claim was procedurally defaulted. Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, he must exhaust his state-court remedies by fairly presenting all of his constitutional claims to the highest state court and all appropriate prior state courts. *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). The purpose of the exhaustion rule is to give the state courts a full and fair opportunity to resolve federal constitutional claims before

they are presented to the federal court. *Rose v. Lundy*, 455 U.S. 509, 518 (1982). Exhaustion requires more than notice—a petitioner must present enough information to allow the state courts to apply controlling legal principles to the facts bearing upon his constitutional claim. *Picard v. Connor*, 404 U.S. 270, 276–77 (1971).

*1. Woods's Exhaustion of State-Court Remedies*

Federal courts use state-court records to determine whether the petitioner raised the same issue in state court that is now presented in the habeas proceeding. *Picard*, 404 U.S. at 276. Woods's merits brief before the Michigan Court of Appeals raised the following, general issue for that court's consideration: "Whether the defendant was denied the effective assistance of counsel in violation of the Sixth Amendment Right to Counsel." R. 15-2 at 1. The merits brief listed the following reasons that defense counsel was ineffective: "(a) Failure to request an instruction on the issue of flight"; "(b) Failure to object to the trial court's refusal to re-instruct the jury after their request"; and "(c) Failure to argue missing evidence." R. 15-2 at 2–4. None of these reasons raised the specific objection that Woods raised before the district court, that is, that counsel failed to discover Brewington's criminal history or effectively cross-examine Brewington on that issue. In a motion to remand for a new trial, which was filed after the merits brief but before the state appellate court heard oral argument, Woods further elaborated that "counsel failed to conduct an investigation of the principal witnesses against the defendant," R. 15-3 at 17, and that he "failed to explore whether or not there was an agreement between a key prosecution witness and the prosecutor in exchange for his testimony (an agreement to reduce his sentence)." R. 15-3 at 18. That motion was held in abeyance until oral argument, and was ultimately denied as to the ineffective assistance of counsel claim. Woods contends that the

combination of his general ineffective assistance claim in the merits brief and his more specific contention in the motion to remand amount to exhaustion of his claim.

As a preliminary matter, Woods's umbrella ineffective-assistance claim was insufficient to properly raise the failure-to-investigate issue before the Michigan Court of Appeals on direct appeal. *See Picard*, 404 U.S. at 276. This general claim was coupled with a series of more specific claims, providing a list of ways in which trial counsel was allegedly ineffective. Woods's merits brief did not give the Michigan Court of Appeals any reason to suspect that a failure to investigate issue was waiting in the wings. Therefore, Woods's general claim did not provide the state appellate court a "fair opportunity" to apply controlling legal standards to the facts of this claim. *See id.* at 276–77.

Woods's claim that his motion to remand exhausted the failure-to-investigate claim ignores the procedural norms of the Michigan Court of Appeals. As that court has made clear, it will review only those claims "stated in the questions presented section of [a] defendant's brief [or] suggested by the stated issues." *People v. Ewing*, 2005 WL 658835 at *4 (Mich. Ct. App. 2005); *see also Haytham v. Bell*, 2008 WL 3875399, at *1 (W.D. Mich. 2008). In order to fairly present his claim of failure to investigate before the Michigan Court of Appeals, Woods needed to include it within his questions presented on direct appeal. It follows that, as a general matter, a motion to remand would not fairly present an issue before the Michigan Court of Appeals. *See Black v. Ashley*, 87 F.3d 1315 (6th Cir. 1996) (unpublished table decision) (No. 95-6184, available at 1996 WL 266421) ("The fair presentation requirement is not satisfied when a claim is presented in state court in a procedurally inappropriate manner that renders consideration of the merits unlikely.").

In support of his reliance on the motion to remand, Woods points to *Elmore v. Foltz*, 768 F.2d

773 (6th Cir. 1985). There, we found a petitioner had fairly presented his claims, including ineffective assistance of counsel, through a motion to remand that was filed before the merits of the appeal were briefed or argued. *Id.* at 775. Woods asks us to extend the ruling in *Elmore* to his case, where the motion to remand was filed after the brief on the merits. We made a comparable extension in the context of a pro se litigant in *Cottenham v. Jamrog*, 248 Fed. App'x 625 (6th Cir. 2007), while noting that pro se petitioners receive "less stringent standards" in determining fair presentation. *Id.* at 633 (quoting *Caver v. Straub*, 349 F.3d 340, 347 (6th Cir. 2003)). In *Jamrog*, the petitioner "repeatedly raised the issue of his problems with [his counsel] before the Michigan Court of Appeals, by motions and by letters to the court." *Jamrog*, 248 Fed. App'x at 633. In both cases, we concluded that the claims were exhausted because the petitioners' motions were procedurally required and sufficiently detailed to "fairly present" the petitioners' claims to the Michigan Court of Appeals. *Id.* at 634; *Elmore*, 768 F.2d at 775.

With regard to procedure, our decision in *Elmore* hinged on the fact that, under the Michigan General Court Rule that was in force at the time of Elmore's direct appeal, a motion to remand was the proper way to handle his claim. *Elmore*, 768 F.2d at 775. Elmore could not raise his issues in subsequent briefs after the motion to remand had been denied because there would have been an inadequate record for subsequent decisions. *Id.* Under the modified Michigan Rule that applied to Woods, a motion to remand is permitted where the factual record is insufficient for appellate consideration. M.C.R 7.211(C)(1). However, Woods failed to make a timely request for a *Ginther* hearing—the process for developing facts to support an ineffective assistance of counsel claim, *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973). Because of this failure, appellate review of

- 16 -

Woods's ineffective assistance claims was limited to the record. *See id.*; *People v. Woods*, No. 136731, at 3 (Mich. Ct. App. 1993). Therefore, unlike the petitioner in *Elmore*, Woods's motion to remand was not procedurally viable.

Besides, Woods's claim on remand was not sufficiently detailed to fairly present the claim he now offers. In *Elmore*, we noted that "given the length and detail of that motion, and given the denial of the motion for 'lack of merit,' we cannot say that Elmore failed to fairly present his constitutional claims to the Michigan Court of Appeals." *Elmore*, 768 F.2d at 775. By contrast, Woods's cursory statement in the motion to remand, without further explanation, did not put the Michigan Court of Appeals on notice of Woods's claim that counsel should have discovered Brewington's bond status and cross-examined him on his potential bias. Moreover, the motion to remand was considered by the Michigan Court of Appeals only in the context of its tardiness—not for its merit, as in *Elmore*. *See id.* Instead, Woods's motion to remand was summarily denied because the *Ginther* motion was not timely filed in the trial court. *Woods*, No. 136731, at 3 (citing *People v. Armendarez*, 468 N.W.2d 893, 901 (Mich. Ct. App. 1991)).

Based on these important differences between the motion discussed in *Elmore* and the motion to remand that Woods seeks to rely on, it would not be appropriate to extend *Elmore*'s holding in this case. This is supported by the fact that the motion to remand in *Elmore* was submitted before the merits brief, securing more meaningful review. *Id.* at 775. Moreover, the ruling in *Jamrog* must be considered in light of its application to a pro se petitioner. *Jamrog*, 248 Fed. App'x at 632. Because Woods was represented by counsel in his direct appeal, we cannot extend the same leniency here. It follows that Woods's present claim was not exhausted through his motion to remand.

2. *Purported State Exhaustion*

Along with his underlying argument that the motion to remand exhausted his ineffective assistance claims, Woods has submitted briefs that were filed by Woods and by the State in the Michigan trial court in support and opposition of Woods's post-conviction motion for relief from judgment, which he contends also demonstrate exhaustion. In its brief opposing relief from judgment, the State argued that the claim of failure to investigate Brewington was presented during oral argument in the Michigan Court of Appeals. Woods contends the State's admission that this issue was presented during oral argument necessarily means it was exhausted.

We disagree. Briefs filed in the Michigan Court of Appeals must contain a clear, concise, and separately numbered list of the questions to be considered on appeal. M.C.R. 7.212(C)(5). Issues not placed in the statement of questions presented are waived. *Van Buren Twp. v. Garter Belt*, *Inc.*, 673 N.W.2d 111, 134 (Mich. Ct. App. 2003). However, that court retains discretion to hear such waived issues under certain circumstances, so it is true that Woods could have argued this claim before the state appellate court during oral argument. *See id.* Regardless, this is not the procedurally appropriate way to pursue a claim in the Michigan Court of Appeals, and cannot satisfy the fair-presentation requirement without evidence that court actually considered the claim. *See Black*, 1996 WL 266421, at *1. The opinion from the Michigan Court of Appeals limited its consideration to the questions presented in Woods's appellate brief and, relying only on the record, concluded that Woods had not demonstrated his counsel was defective. *Woods*, No. 136731, at 3. The opinion does not evince any consideration of whether counsel was deficient for failing to investigate Brewington. *See id.* Thus, like the district court, we conclude that Woods has failed to exhaust state-court remedies with regard

to the ineffective assistance of counsel claim he now presents.

### 3. Procedural Default

At this point, no state-court remedy would be available to Woods in Michigan courts because he already filed a motion for relief from judgment in the state trial court, and may not file a successive motion. *See* M.C.R. 6.502(G)(1) ("one and only one motion for relief from judgment may be filed with regard to a conviction"). Therefore, Woods's ineffective-assistance claim is procedurally defaulted. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001). This is true despite the fact that the Michigan courts have not actually invoked the procedural bar because the Michigan courts could not apply a procedural rule to claims not brought before them. *Buell*, 274 F.3d at 349. We have stated that "'a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.'" *Buell*, 274 F.3d at 349 (quoting *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001). A petitioner is not allowed to present unexhausted claims unless he can show cause to excuse his failure to present the claims in the state courts, and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). Woods does not offer such cause and prejudice to excuse his default.

In the absence of cause and prejudice, a petitioner's procedural default may be excused if he establishes that a fundamental miscarriage of justice will result from failure to consider the merits of his claims. *Coleman v. Thompson*, 501 U.S. 722, 750 (1992). Woods urges that his ineffective assistance claim should be heard on its merits to avoid such a fundamental miscarriage of justice. But this narrow exception to the exhaustion requirement is reserved for the extraordinary case in which an alleged constitutional error probably resulted in the conviction of one who is actually innocent of

the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004). A petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Here, no such showing has been made. Woods has not demonstrated that a reasonable jury would be unable to convict him had they known Brewington was released on bond at the time of trial. Indeed, the jury had reason to suspect Brewington's credibility and potential bias without such knowledge, particularly after hearing that these tragic events unfolded from a failed drug transaction. Woods has not supported his allegations of constitutional error with new, reliable evidence of actual innocence in order to overcome his procedural default.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of the writ.