NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0432n.06

No. 12-2647

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 13, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| IVAN BECHTOL, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| JOHN PRELESNIK, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, ROGERS, and SUTTON, Circuit Judges.

ROGERS, Circuit Judge. Ivan Bechtol appeals a district court judgment denying his petition for a writ of habeas corpus. Bechtol was convicted in Michigan state court of conspiracy to commit first degree murder, first degree home invasion, conspiracy to commit kidnapping, and attempted kidnapping. Bechtol's conviction was related to the abduction and murder of Jamie Moran, whose body was found in her partially submerged car in the Torch River on September 5, 2001. The facts of the case were summarized, in detail, by the magistrate judge in his report and recommendation. Bechtol contends that his Fourteenth Amendment due process right to present an adequate defense, as established by the Supreme Court in *Webb v. Texas*, 409 U.S. 95 (1972), was violated and that his conviction to commit first degree premeditated murder is not supported by sufficient evidence. For the following reasons, the district court properly rejected Bechtol's claims and denied habeas relief.

**I.**

On Monday, September 3, 2001, Bechtol and William Cron were involved in a home invasion and attempted abduction of Moran.  Cron and Moran had lived together and gotten engaged, but broke up in early August after Cron was charged with criminal sexual conduct against Moran's sister.  The prosecutor's theory at trial was that Cron and Bechtol had conspired to abduct and kill Moran to prevent her from revealing their illegal drug dealings.

The day before, Moran and her new boyfriend, Ira Henke, went camping with another couple, Brent Torrey and Jessica Corner.  Moran left the campsite for approximately two hours that night, went to Ryan Hittle's house, got about 3 grams of cocaine from Cron, and returned to the campsite to use the drugs.  At about 3:00 a.m. Monday morning, Moran and Henke went back to Henke's trailer to watch movies.  Several hours later, Cron and Bechtol stopped by the campsite looking for Moran.  Cron asked Torrey if Moran "was f—ing anybody," and Torrey responded in the negative.

Cron and Bechtol next went to Henke's trailer, where Cron began yelling at Moran and asking "Where's my shit?"  Cron pulled the cord out of the phone to prevent Henke from calling 911.  Henke pinned down Cron and told Moran to call 911, at which point Bechtol came into the trailer and told Henke to let go of Cron.  Henke let go, and Cron assaulted Moran, grabbed her by the arm and said that she was leaving with him whether she liked it or not.  Henke held on to Moran so Cron could not take her with him.  Cron and Bechtol eventually left.

On Tuesday, September 4, 2001, Moran changed her cell phone number, yet Cron acquired the new number and made repeated calls to Moran while she was at work.  Moran's

coworker, Brenda Kay Standfest, answered one call that day and Cron told her that, "he had too much to lose, that he had too much going on with the police and he just needed to see her [Moran] one more—last time to say his goodbyes." Moran called 911 because she was afraid of Cron and believed he was near her workplace. After work that day, Moran told Standfest that Moran felt that she was being followed by Bechtol, so Moran and Standfest met at a Shell gas station. Moran decided to go to her parents' home for safety, because Moran's sister had a personal protection order against Cron. Moran told Standfest that Cron and another man tried to kidnap her on September 3, but she did not mention the other person by name.

Another friend, Jessica Corner, testified that Moran called her on Tuesday to give Corner her new cell phone number. Moran said she was on her way to her parents' house, and while they were talking, Moran got another call on her cell phone and clicked over to answer the call. When Moran clicked back to Corner, Moran was screaming. Corner heard a man's voice that sounded like Cron, but she could not hear what he was saying.

> Danny Lee Davis testified that he was in the same cell block with Petitioner in the Kalkaska County Jail in November 2001. Davis testified that the prosecutor's office offered him some leniency in exchange for his cooperation and testimony in this case. Davis pleaded guilty to one count of third-degree criminal sexual conduct and was sentenced to imprisonment of twenty-four months to fifteen years. Davis was ashamed of the charges against him, so he told Petitioner that he was in jail on drug charges. Petitioner told Davis that he was in jail for home invasion involving Jamie Moran. Over the next couple of days, Petitioner asked Davis if he could "keep a secret" and began offering more details about the events leading up to Moran's murder. Petitioner stated that he and Cron went over to the trailer to get Moran. When Petitioner heard a commotion coming from inside the trailer, he went inside to get Cron. Petitioner explained that he and Cron were worried about Moran turning them in for dealing drugs. After the failed attempt to take Moran from the trailer, they decided to get her coming home from work. According to Petitioner, Cron and a friend planned to wait by her workplace,

while Petitioner and a friend of his waited over by her house in case she got past Cron. The plan was to take Moran to a park in Rapid City, give her a lethal dose of drugs and make it look like she drove herself into the river. Petitioner told Davis that they met in the park as planned, but Cron left with Moran when another car pulled into the parking lot. At that point, Moran was drugged, but alive. Petitioner indicated that the drugs were provided by Ryan Hittle, but Hittle refused to deliver the lethal dose himself. Petitioner's cellmate, Scott Riplow also was present when Petitioner told Davis about the home invasion and the plan to kill Moran.

Davis testified that about a week after telling Davis about Moran's murder, Petitioner approached Davis and said, "You better not utter a word . . . . I know you've got a wife on the outside," which Davis took as a threat. After consulting with his wife, Davis decided to contact the police in late January 2002, to tell them what Petitioner had told him about Jamie Moran's murder. On cross-examination, Davis testified that he was at the Kalkaska County courthouse on September 10, 2001, the same day that Cron had a bond revocation hearing. Davis maintained that he only heard testimony about Cron's attempt to kidnap Moran from Henke's residence on September 3. Davis testified that he did not ask for a deal when he provided the information to police, but asked to be released on bond so that he could protect his wife from retaliation.

R. 40, at 8–9, PageID # 503–04 (citations omitted).

Matthew Alan Cron, William Cron's younger brother, provided detailed testimony about Cron's activities on Tuesday, September 4, 2001, when Cron purchased various supplies, including work gloves, baseball gloves, a fake mustache and side burns, and hair dye, which he then put on to change his appearance. Early the next morning, September 5, 2001, Cron called and asked Matthew to pick him up at the bar by Bear Lake. When Matthew arrived, Cron was cold because he was wet from the waist down, and Cron told Matthew to wipe his fingerprints off the car he had stolen and to get rid of the keys. Later, Cron instructed Matthew to burn several items in their fireplace, including the shoes that they had been wearing, Cron's clothes,

and several pads of paper and pens, and to rake the ground outside their house to get rid of any shoe impressions.

Bechtol was convicted by a jury in Kalkaska County Circuit Court of conspiracy to commit first degree murder, first degree home invasion, conspiracy to commit kidnapping, and attempted kidnapping. He was sentenced to life in prison for conspiracy to murder, 18-28 years for conspiracy to kidnap, 10-20 years for home invasion, and 3-5 years for attempted kidnapping, all to run consecutively. Bechtol filed a motion for new trial/resentencing in Kalkaska County Circuit Court, in which he made no mention whatsoever of witness Ryan Hittle. (Hittle's failure to testify is at the heart of Bechtol's first claim in this appeal.) Instead, Bechtol argued that his due process right to present witnesses was violated because the trial judge allowed witness Charles Lee to refuse to testify because his answers might incriminate him. Bechtol also asserted that his trial counsel was ineffective for failing to offer proof regarding Lee's proposed testimony. The motion was denied.

Bechtol appealed his conviction and sentence to the Michigan Court of Appeals, which affirmed the decision of the trial court. Bechtol's brief on direct appeal raised the issue of witness intimidation, but asserted this argument specifically with respect to witness Charles Lee in its statement of questions presented and argument heading.

    I.    WAS DEFENDANT DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT WITNESSES AND PRESENT A DEFENSE BY THE PROSECUTION'S THREAT TO PROSECUTE CHARLES LEE FOR EXTORTION AND THE COURT'S SUBSEQUENT RULING THAT LEE WAS ENTITLED TO INVOKE HIS PRIVILEGE AGAINST SELF-INCRIMINATION?

R. 29-4, at 2, PageID # 8. In the body of that argument, Bechtol included some facts relating to Ryan Hittle, namely, that defense counsel expressed that he was "worried about Fifth Amendment stuff," and asked about the procedure for appointing counsel for Hittle. Bechtol asserted that the prosecutor stated, "I very much consider [Hittle] a suspect, and the investigation as to his involvement is far from over." Bechtol described how Hittle stated that he would testify, that the trial judge asked Hittle if he had been forced or coerced into waiving his right to remain silent, and also if Hittle would like more time to confer with his attorney. Hittle stated that he would like to do so, he did confer with his attorney, and subsequently returned to the witness stand and stated that he would not testify. Of the 16 pages devoted to this issue of witness intimidation, only 10 sentences pertain to Hittle and all are presented in an ancillary role to the central argument of Lee's intimidation. Bechtol's brief refers twice to his earlier motion for a new trial, which specifically alleged witness intimidation only with respect to Charles Lee. Bechtol explicitly articulated his argument in the body of his brief with a narrowly tailored focus on Charles Lee, which mirrors his statement of issues presented and the argument heading: "The prosecutor's actions (regarding witness Lee) infringed on Defendant's right to present witnesses, thus denying him due process of law, *Webb v Texas*, 409 US 95; 93 SCt 351; 34 L Ed 2d 330 (1972)." In sum, the specific focus of Bechtol's witness intimidation argument was Charles Lee.

In affirming the trial court decision, the Michigan Court of Appeals denied relief and rejected Bechtol's argument that he was denied due process when the prosecution intimidated a witness into not testifying. The Michigan Court of Appeals decision did not mention specific names regarding the witness intimidation claim, but clearly construed Bechtol's argument as

pertaining to only one potential defense witness and relied upon facts that were unique to the argument regarding Charles Lee. Bechtol filed a *pro per* application for leave to appeal to the Michigan Supreme Court, which was denied. The Michigan Supreme Court also denied Bechtol's motion to remand for an evidentiary hearing.

Bechtol next filed a motion for relief from judgment in Kalkaska County Circuit Court, seeking relief on two issues, namely: that Danny Davis committed perjury in violation of Bechtol's due process rights, and that his counsel was ineffective for failing to investigate and call his codefendant, Cron, as a defense witness. The Kalkaska County Circuit Court denied Bechtol's motion for relief from judgment. Bechtol sought leave to appeal in the Michigan Court of Appeals, raising only the claim that witness Danny Davis perjured himself during Bechtol's trial; that application for leave was denied. Bechtol then filed a motion for reconsideration with the Michigan Supreme Court, which as amended, sought a new trial under the same theory. That motion was also denied.

Bechtol next filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S. § 2254, raising four claims. As pertinent to this appeal, Bechtol argued that his right to present an adequate defense was violated because the prosecutor and trial judge stopped Hittle from testifying by intimidating him with threats of prosecution, and that the evidence at trial was insufficient. The magistrate judge recommended that Bechtol's habeas petition be denied, but recommended certifying Bechtol's claims for appeal. The magistrate judge determined that Bechtol's witness intimidation claim regarding Hittle was procedurally barred because Bechtol failed to raise the claim on direct appeal or in a motion for relief from judgment.

Bechtol argued that the magistrate judge erred in finding that the Michigan Court of Appeals did not unreasonably apply federal law regarding his ineffective assistance of counsel claim, that Bechtol's witness intimidation claim regarding Ryan Hittle was procedurally barred, that Bechtol failed to meet the requisite standard for raising an issue on collateral attack that could have been raised on direct appeal, and that the Michigan courts did not unreasonably apply established federal precedent, in concluding that sufficient evidence supported Bechtol's conviction. He also asserted an independent constitutional violation that the prosecutor knowingly offered false evidence.

The district court denied Bechtol's habeas petition and granted a certificate of appealability as to (1) whether the actions of the prosecutor or the Kalkaska County Circuit Court judge with respect to Ryan Hittle violated Petitioner's Fourteenth Amendment due process right as established by the Supreme Court in *Webb v. Texas*, 409 U.S. 95 (1972), and (2) whether there existed sufficient evidence to support a conviction of Petitioner for conspiracy to commit first degree murder (Mich. Comp. Laws §§ 750.157a & 750.316). The district court determined that Bechtol's witness intimidation claim regarding Ryan Hittle was not procedurally barred, and that Bechtol raised the argument with respect to Hittle, beginning in the third paragraph of his appellate brief, even though the Michigan Court of Appeals failed to address that specific argument in its November 30, 2004 opinion. Bechtol timely appealed, arguing that the judge and prosecutor wrongfully intimidated Ryan Hittle into not testifying and that his conviction was not supported by sufficient evidence.

**II.**

The district court correctly denied Bechtol's petition for a writ of habeas corpus, as his witness intimidation claim was procedurally defaulted. Bechtol did not properly present his witness intimidation claim regarding Ryan Hittle on direct appeal in state court, and thus did not exhaust that claim. Moreover, Bechtol has not demonstrated any cause or prejudice to excuse this default.

Bechtol's witness intimidation claim is procedurally barred because Bechtol failed to exhaust state court remedies by not properly presenting this issue in his appellate brief to the Michigan Court of Appeals, and any alternative state remedies are no longer available. "A claim may become procedurally defaulted in two ways." *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006). First, "a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (citing *Williams,* 460 F.3d at 806). "Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806. "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Bechtol's witness intimidation claim is procedurally defaulted under the second *Williams v. Anderson* category.

Bechtol failed to exhaust state court remedies for his intimidation of Hittle claim by not fairly presenting the claim to the Michigan Court of Appeals. Exhaustion requires a petitioner to

"fairly present[]" each federal claim "to the state courts[, including] the state court of appeals and the state supreme court." *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). Fair presentation, in turn, requires that the petitioner "make a specific showing of [each] alleged claim," including "both the factual and legal basis for each claim." *Id.* at 414–15; *see also Williams,* 460 F.3d at 806. Bechtol failed to make such a showing with respect to the Hittle witness intimidation claim in his brief on appeal to the Michigan Court of Appeals. Although Bechtol's argument heading raised the same legal issue of witness intimidation constituting a due process violation, it does not adequately present the factual basis of this claim—that Ryan Hittle was intimidated. In addition, the central focus of Bechtol's argument in the body of his brief regarding witness intimidation focused squarely on Lee, and only mentioned facts relating to Hittle in a manner ancillary to and in support of his claim that Lee was intimidated into not testifying. "Federal courts of appeals refuse to take cognizance of arguments that are made in passing without proper development. State appellate courts are entitled to follow the same practice." *Johnson v. Williams*, 133 S. Ct. 1088, 1095 (2013) (citations omitted).

Bechtol's appellate brief did not fairly present the claim. Michigan Court Rule 7.212(C)(5) requires an appellant's brief to contain "[a] statement of questions involved, stating concisely and without repetition the questions involved in the appeal[, and each] question [must be]expressed and numbered separately." M.C.R. 7.212(C)(5). In Bechtol's brief the statement of questions presented does not raise the issue of witness intimidation with respect to Ryan Hittle. Instead, that section, which reads as follows, frames that claim as pertaining only to Charles Lee:

I.    WAS DEFENDANT DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT WITNESSES AND PRESENT A DEFENSE BY THE PROSECUTION'S THREAT TO PROSECUTE CHARLES LEE FOR EXTORTION AND THE COURT'S SUBSEQUENT RULING THAT LEE WAS ENTITLED TO INVOKE HIS PRIVILEGE AGAINST SELF-INCRIMINATION?

R. 29-4, at 2, PageID # 8.  Failing to place issues in the statement of questions presented "is not the procedurally appropriate way to pursue a claim in the Michigan Court of Appeals, and cannot satisfy the fair-presentation requirement without evidence that [the] court actually considered the claim."  *Woods v. Booker*, 450 F. App'x 480, 490 (6th Cir. 2011).  "The fair presentation requirement is not satisfied when a claim is presented in state court in a procedurally inappropriate manner that renders consideration of the merits unlikely."  *Id.* at 489 (quoting *Black v. Ashley,* 87 F.3d 1315, 1996 WL 266421, at *1 (6th Cir.1996)).

Further, state court remedies were no longer available at the time Bechtol's federal petition was filed.  Prior to filing his federal petition, Bechtol had already filed a motion for relief from judgment in state trial court, and state law prohibits filing a successive motion.  M.C.R. 6.502(G)(1) ("[O]nly one motion for relief from judgment may be filed with regard to a conviction.").  "If the claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred."  *Cone v. Bell*, 243 F.3d 961, 967 (6th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)), rev'd on other grounds, 535 U.S. 635 (2002).  Bechtol's witness intimidation claim falls into this category.

Bechtol has not shown cause sufficient to excuse the procedural default with respect to the Hittle claim. The Supreme Court "require[s] a prisoner to demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Bechtol argues in his reply brief that any procedural default with respect to the Hittle claim was caused by Bechtol's former appellate counsel, yet he did not raise an ineffective assistance of appellate counsel claim below. Bechtol did not mention ineffective assistance of appellate counsel with respect to the Hittle claim in his *pro se* §2254 petition. Instead, the only ineffective assistance of counsel claim he raised was limited to "his attorney[']s failure to object to the admission of evidence that [Bechtol,] when questioned by police after the alleged home invasion, invoked his right to remain silent and stated that he wanted a lawyer." R. 1, at 5, PageID # 5.

Moreover, such an ineffective assistance of appellate counsel claim would be procedurally barred because it was not raised in state court. "[A] claim of ineffective assistance . . . must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (1986)) (internal quotations omitted). Bechtol did not present an ineffective assistance of appellate counsel claim with respect to the Hittle witness intimidation claim in Michigan court. No such claim was presented in his *pro se* motion for relief from judgment, his application for leave to appeal in the Michigan Court of Appeals, or his subsequent motion for

reconsideration with the Michigan Supreme Court.[1] A petitioner's *pro se* status and ignorance of his rights do not excuse his failure to raise grounds before the state courts. *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995).

Finally, Bechtol has not shown that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice, which can only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House v. Bell*, 547 U.S. 518, 536 (2006). Because Bechtol's due process claim was procedurally defaulted, this panel need not address the merits of this claim.

### III.

Moreover, the Michigan Court of Appeals[2] reasonably applied clearly established federal law in deciding that sufficient evidence supported Bechtol's conviction of conspiracy to commit first degree premeditated murder. Bechtol's application is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d), because he filed his federal habeas petition after AEDPA's effective date. *Moreland v. Bradshaw*, 699 F.3d 908, 916 (6th Cir. 2012). Under AEDPA's deferential standard, a writ of habeas corpus may be

---

[1] Bechtol's motion for relief from judgment sought relief on two issues, namely that Danny Davis committed perjury in violation of Bechtol's due process rights, and that his counsel was ineffective for failing to investigate and call his codefendant, Cron, as a defense witness. The Kalkaska County Circuit Court denied Bechtol's motion for relief from judgment on August 4, 2006. Bechtol sought leave to appeal in the Michigan Court of Appeals, raising only the claim that witness Danny Davis perjured himself during Bechtol's trial; that application for leave was denied. On November 5, 2008, Bechtol filed a motion for reconsideration with the Michigan Supreme Court, which was amended on March 3, 2009, seeking a new trial under the same theory. That motion was also denied.

[2] Bechtol filed a *pro per* application for leave to appeal to the Michigan Supreme Court, which was denied on November 5, 2005.

granted only if the state court's decision "was contrary to, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d) (emphasis added). Two layers of deference apply to this inquiry: "First . . . we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). "Second, even were we to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* The Michigan Court of Appeals did not unreasonably apply federal law when it held that the evidence was sufficient to show that Bechtol conspired with Cron to abduct and murder Moran. In reviewing Bechtol's conviction, the state appellate court determined that:

> there was sufficient evidence to sustain defendant's conspiracy convictions. The prosecutor presented testimony that established [Bechtol's] involvement in the subsequent abduction and murder of the victim by conspiring with Cron. Although [Bechtol] challenges this testimony . . . matters of credibility are left to the trier of fact. *Id.*

> We reject [Bechtol's] argument that because he was taken into temporary custody on September 3, 2001, and the victim was found dead on September 5, 2001, that no agreement could have continued during that time to support a conviction of conspiracy. The offense of conspiracy is complete upon the formation of the agreement. *People v. Justice (After Remand),* 454 Mich 334, 345-346; 562 NW2d 652 (1997). The fact that [Bechtol] was in temporary custody during the period at issue does not automatically negate proof of [Bechtol's] involvement in a conspiracy to kidnap and murder the victim.

R. 1-2, at 6, PageID # 12. The district court properly held that the Michigan Court of Appeals's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

The Michigan Court of Appeals reasonably determined that, taking the evidence presented at Bechtol's trial in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of conspiracy to commit first degree murder beyond a reasonable doubt. Under Michigan law, anyone who knowingly agrees with someone else to commit first degree premeditated murder is guilty of conspiracy to commit first degree premeditated murder, Mich. Comp. Laws § 750.157a, and Mich. Comp. Laws § 750.316 defines first degree murder to include murder "perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." The offense of conspiracy is complete upon formation. *People v. Justice*, 562 N.W.2d 652, 658 (Mich. 1997). Both witness testimony and circumstantial evidence existed in support of Bechtol's conspiracy conviction. In evaluating the sufficiency of the evidence, "[c]ircumstantial evidence is entitled to the same weight as direct evidence." *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). First, witness Scott Riplow testified that Bechtol was aware that Cron intended to kill Moran before they went to Henke's trailer. Cron called Hittle six times while Cron and Bechtol drove from the campground to Henke's trailer. Henke testified that, while Bechtol was in his trailer, Cron told Moran that she was leaving with him whether she liked it or not. Bechtol also admitted at trial that he was not entirely truthful with the detective who interviewed him about the home invasion. Furthermore, Danny Davis testified that Bechtol told him that he and Cron planned to take Moran to a park

after she got off work, give her a drug overdose, and make her death look like she drove into the river. Davis also stated that Hittle confirmed the fact that, although Hittle refused to administer the lethal dose to Moran, he did provide the drugs to Bechtol and Cron. Although Danny Davis subsequently recanted his testimony as to Bechtol's confession, substantial evidence of his reliability did exist at trial: Davis made four written statements and passed a polygraph test as to this testimony, in addition to his in-court testimony. Moreover, as the state trial court pointed out in its order denying relief from judgment, Davis gave the alleged testimony six months *after* his own sentencing, and his recantation occurred two years later, shortly after his parole denial in 2004. The standard under *Jackson v. Virginia* "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 319). The Michigan Court of Appeals was not unreasonable in its sufficiency determination, and Bechtol's request for habeas relief on this claim was properly denied.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.